IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOSEPHINE ROBAIR, §
§
    Plaintiff, §
§
v. § CIVIL ACTION NO. H-16-776
§
CHI ST. LUKE'S SUGARLAND, §
§
    Defendant. §

**<u>MEMORANDUM AND RECOMMENDATION</u>**

Pending before the court[1] is Defendant St. Luke's Community Development Corporation-Sugar Land d/b/a St. Luke's Sugar Land Hospital's ("Defendant") Motion for Summary Judgment (Doc. 58). The court has considered the motion, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.

## I.  Case Background

Plaintiff filed this employment action against Defendant, alleging discrimination based on her race (black) and national origin (Nigerian-American) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), after Defendant failed to hire Plaintiff for several nursing positions.[2]

## A.  <u>Factual Background</u>

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. <u>See</u> Doc. 8, Ord. Dated Apr. 12, 2016.

[2] <u>See</u> Doc. 1, Pl.'s Compl.; Doc. 1-3, Pl.'s Charge of Discrimination p. 2.

## 1. Recruiting Process

From February through July 2015, Plaintiff applied for nine positions throughout the Houston area.[3] To apply for a position with Defendant, an applicant must first set up a online profile in Defendant's recruiting system.[4] After creating a profile, the individual had the ability to see and apply for multiple open positions by uploading his or her resume or other required information to the system.[5] The recruiting system kept track of the application throughout the review process by assigning a requisition number for each position and a candidate identification number for each applicant.[6] The system preserved the history of each application, including when the applicant completed it, if it was updated, if the applicant received an interview, or if the

---

[3]      See Doc. 58-1, Ex. 8 to Def.'s Mot. for Summ. J., Job Tracking Spreadsheets pp. 1-10.

[4]      See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Victor Stonebrook ("Stonebrook") ¶ 5; Doc. 58-1, Ex. 3 to Def.'s Mot. for Summ. J., Aff. of Joseph Chiobi ("Chiobi") ¶ 5; Doc. 58-1, Ex. 4 to Def.'s Mot. for Summ. J., Aff. of Marsha Kane ("Kane") ¶ 6; Doc. 58-1, Ex. 5 to Def.'s Mot. for Summ. J., Aff. of Katie Mathis ("Mathis") ¶ 5; Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of John Warden ("Warden") ¶ 5; Doc. 58-1, Ex. 7 to Def.'s Mot. for Summ. J., Aff. of Billy Mitcham ("Mitcham") ¶ 5.

[5]      See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook ¶ 5; Doc. 58-1, Ex. 3 to Def.'s Mot. for Summ. J., Aff. of Chiobi ¶ 5; Doc. 58-1, Ex. 4 to Def.'s Mot. for Summ. J., Aff. of Kane ¶ 6; Doc. 58-1, Ex. 5 to Def.'s Mot. for Summ. J., Aff. of Mathis ¶ 5; Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of Warden ¶ 5; Doc. 58-1, Ex. 7 to Def.'s Mot. for Summ. J., Aff. of Mitcham ¶ 5.

[6]      See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook ¶ 6; Doc. 58-1, Ex. 3 to Def.'s Mot. for Summ. J., Aff. of Chiobi ¶ 6; Doc. 58-1, Ex. 4 to Def.'s Mot. for Summ. J., Aff. of Kane ¶ 7; Doc 58-1, Ex. 5 to Def.'s Mot. for Summ. J., Aff. of Mathis ¶ 6; Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of Warden ¶ 6; Doc. 58-1, Ex. 7 to Def.'s Mot. for Summ. J., Aff. of Mitcham ¶ 6.

applicant was rejected for the position.[7]  The online system did not permit the recruiters or hiring managers to access information about an individual's race or ethnicity.[8]

Each position was assigned to a particular recruiter who then conducted several levels of review before sending a culled list of applicants to the hiring manager, who made the ultimate decision of whom to hire.[9]  In conducting their reviews of applications, recruiters used a three-step process.[10]  During the first step, a recruiter determined if the applicant fulfilled the position's minimum qualifications.[11]  After the pool was narrowed to only those with the minimal qualifications, in the second step, the recruiter

---

[7]    See, e.g., Doc. 58-1, Ex. 15 to Def.'s Mot. for Summ. J., George Caneda's ("Caneda") App. Info. pp. 1-6.

[8]    See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook ¶ 12; Doc. 58-1, Ex. 3 to Def.'s Mot. for Summ. J., Aff. of Chiobi ¶ 13; Doc. 58-1, Ex. 4 to Def.'s Mot. for Summ. J., Aff. of Kane ¶ 12; Doc 58-1, Ex. 5 to Def.'s Mot. for Summ. J., Aff. of Mathis ¶ 11; Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of Warden ¶ 12; Doc. 58-1, Ex. 7 to Def.'s Mot. for Summ. J., Aff. of Mitcham ¶ 12.

[9]    See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook ¶¶ 4, 7; Doc. 58-1, Ex. 3 to Def.'s Mot. for Summ. J., Aff. of Chiobi ¶¶ 5, 8; Doc. 58-1, Ex. 4 to Def.'s Mot. for Summ. J., Aff. of Kane ¶¶ 4, 7; Doc 58-1, Ex. 5 to Def.'s Mot. for Summ. J., Aff. of Mathis ¶¶ 3, 6; Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of Warden ¶¶ 4, 7; Doc. 58-1, Ex. 7 to Def.'s Mot. for Summ. J., Aff. of Mitcham ¶¶ 4, 7.

[10]   See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook ¶ 7; Doc. 58-1, Ex. 3 to Def.'s Mot. for Summ. J., Aff. of Chiobi ¶ 8; Doc. 58-1, Ex. 4 to Def.'s Mot. for Summ. J., Aff. of Kane ¶ 7; Doc. 58-1, Ex. 5 to Def.'s Mot. for Summ. J., Aff. of Mathis ¶ 6; Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of Warden ¶ 7; Doc. 58-1, Ex. 7 to Def.'s Mot. for Summ. J., Aff. of Mitcham ¶ 7.

[11]   See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook ¶ 7; Doc. 58-1, Ex. 3 to Def.'s Mot. for Summ. J., Aff. of Chiobi ¶ 8; Doc. 58-1, Ex. 4 to Def.'s Mot. for Summ. J., Aff. of Kane ¶ 7; Doc 58-1, Ex. 5 to Def.'s Mot. for Summ. J., Aff. of Mathis ¶ 6; Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of Warden ¶ 7; Doc. 58-1, Ex. 7 to Def.'s Mot. for Summ. J., Aff. of Mitcham ¶ 7.

analyzed the remaining applications more closely.[12] In the process of conducting this more-thorough review, an applicant may interviewed by the recruiter.[13] If the applicant survived this step, the recruiter forwarded all qualified applicants' information to the hiring manager, who made the final decision about who was interviewed and ultimately hired.[14]

When Plaintiff applied for the nine positions, her applications were reviewed by the following six recruiters: Victor Stonebrook ("Stonebrook"), for the positions of Resource Nurse Medical/Surgical at Defendant's Houston Medical Center location (Requisition Number ("Req. No.") 1691052) and Staff Registered Nurse ("RN") Outpatient Oncology (Req. No. 1694457); Joseph Chiobi ("Chiobi") for the position of Nurse Supervisor–Perioperative Services (Req. No. 1694283); Marsha Kane ("Kane") for the positions of Manager Patient Care Medical/Surgical for Defendant's Woodlands location (Req. No. 1692449) and RN-Unit Supervisor at the Woodlands location (Req. No. 1694282); Katie Mathis ("Mathis") for the

_____

[12] See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook ¶ 8; Doc. 58-1, Ex. 3 to Def.'s Mot. for Summ. J., Aff. of Chiobi ¶ 9; Doc. 58-1, Ex. 4 to Def.'s Mot. for Summ. J., Aff. of Kane ¶ 8; Doc 58-1, Ex. 5 to Def.'s Mot. for Summ. J., Aff. of Mathis ¶ 7; Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of Warden ¶ 8; Doc. 58-1, Ex. 7 to Def.'s Mot. for Summ. J., Aff. of Mitcham ¶ 8.

[13] See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook ¶ 14.

[14] See id. ¶ 9; Doc. 58-1, Ex. 3 to Def.'s Mot. for Summ. J., Aff. of Chiobi ¶ 9; Doc. 58-1, Ex. 4 to Def.'s Mot. for Summ. J., Aff. of Kane ¶ 9; Doc 58-1, Ex. 5 to Def.'s Mot. for Summ. J., Aff. of Mathis ¶ 8; Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of Warden ¶ 9; Doc. 58-1, Ex. 7 to Def.'s Mot. for Summ. J., Aff. of Mitcham ¶ 9.

position of Clinic Manager–Vintage Location–Perioperative Services (Req. No. 1692748); John Warden ("Warden") for the positions of Medical/Surgical Unit Resource Nurse at the Vintage location (Req. No. 1694226) and Assistant Nurse Manager–Medical/Surgical ICU (Req. No. 1693802); and Billy Mitcham ("Mitcham") for the position of RN Endoscopy–Springwoods Village location (Req. No. 1694406).[15]

Plaintiff's resume, submitted when she applied to these positions, contained typographical errors and misspelled words.[16] Additionally, the resume contained inconsistencies in the employment information, notably, that there were periods of time when she held multiple positions in different states.[17] For example, the resume stated that: (1) she was the community outreach director at the Florida Health Department from August 2009, to the present; (2) she was the assistant director of the emergency room for the Harris County Hospital District in Houston, Texas, from June 2008, to the present; (3) she worked for Nurse Staffing, Inc., in Jacksonville, Florida, from April 2000, to 2015; and (4) she had

---

[15] See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook ¶ 13; Doc. 58-1, Ex. 3 to Def.'s Mot. for Summ. J., Aff. of Chiobi ¶ 14; Doc. 58-1, Ex. 4 to Def.'s Mot. for Summ. J., Aff. of Kane ¶ 13; Doc 58-1, Ex. 5 to Def.'s Mot. for Summ. J., Aff. of Mathis ¶ 12; Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of Warden ¶ 13; Doc. 58-1, Ex. 7 to Def.'s Mot. for Summ. J., Aff. of Mitcham ¶ 13; Doc. 58-1, Ex. 8 to Def.'s Mot. for Summ. J., Job Tracking Spreadsheets pp. 1-10; Doc. 58-1, Ex. 20 to Def.'s Mot. for Summ. J., Staff RN Outpatient Oncology Tracking Hist. & Job Description pp. 1-7.

[16] See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook ¶ 16; Doc. 58-1, Ex. 10 to Def.'s Mot. for Summ. J., Pl.'s Resume pp. 1-2.

[17] See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook ¶ 16; Doc. 58-1, Ex. 10 to Def.'s Mot. for Summ. J., Pl.'s Resume pp. 1-2.

a military career from 1999 to 2005, where she obtained the position of assistant director.[18] The address listed on her resume was a postal box in Jacksonville, Florida.[19]

Plaintiff was not interviewed in-person for any of the positions to which she applied, and none of her applications even made it to the hiring-manager stage of the review process.[20] The only recruiters who had any personal contact with Plaintiff were Stonebrook and Warden.[21] Stonebrook conducted a second-stage phone interview on March 20, 2015, in connection with her application for the Resource Nurse Medical/Surgical position at St. Luke's Houston Medical Center.[22] Plaintiff was selected for the phone interview because of her relevant experience. However, Stonebrook averred that he was concerned about Plaintiff's resume because it was "poorly constructed, contradictory, somewhat difficult to understand" and it "needed improvement," citing errors such as

---

[18]    See Doc. 58-1, Ex. 10 to Def.'s Mot. for Summ. J., Pl.'s Resume pp. 1-2.

[19]    See id.

[20]    See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook ¶¶ 14, 18, 22; Doc. 58-1, Ex. 3 to Def.'s Mot. for Summ. J., Aff. of Chiobi ¶ 17; Doc. 58-1, Ex. 4 to Def.'s Mot. for Summ. J., Aff. of Kane ¶ 14; Doc 58-1, Ex. 5 to Def.'s Mot. for Summ. J., Aff. of Mathis ¶¶ 13, 15; Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of Warden ¶¶ 14-15; Doc. 58-1, Ex. 7 to Def.'s Mot. for Summ. J., Aff. of Mitcham ¶ 14.

[21]    See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook ¶¶ 14-21; Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of Warden ¶¶ 14-15.

[22]    See Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook ¶¶ 13-17.

misspelled words and overlapping dates.[23]  Plaintiff did not advance

any further after this phone interview because Stonebrook concluded

that she "seemed incoherent and her answers to questions were

difficult to follow . . . her train of thought seemed scattered,

her answers to questions did not track, and she seemed

disoriented."[24]

Plaintiff repeatedly attempted to talk to Stonebrook about her

application's status, and Stonebrook scheduled a phone call for

July 29, 2015, in order to provide Plaintiff with advice about her

resume.[25]  Stonebrook asked another recruiter, Anna Alvarado, join

him on the phone call as a witness.[26]  Stonebrook averred that, in

this phone call, Plaintiff "was aggressive, incoherent, and again

seemed disoriented," and when Stonebrook gave Plaintiff feedback

about her resume, Plaintiff "seemed hostile to any such suggestions

and made it clear that she did not want to take my advice."[27]

Stonebrook never met Plaintiff in person and averred that he was

not aware of her race or national origin until the filing of this

lawsuit.[28]

---

[23]    Id. ¶ 16.

[24]    Id. ¶ 17.

[25]    See id. ¶ 19.

[26]    Id.

[27]    See id. ¶ 20.

[28]    See id. ¶ 23.

The other recruiter who had contact with Plaintiff was Warden.[29] Warden met Plaintiff at a job fair in Sugar Land in 2014.[30] Warden averred that he was aware of Plaintiff's race, but was unaware of her national origin until she filed this lawsuit.[31] Warden stated that he did not "believe that [Plaintiff] was a good fit for the positions [he] was recruiting for," and that he was recruiting for a Houston position when Plaintiff told him that she was interested in working in Sugar Land.[32]

Chiobi testified that he did not forward Plaintiff's application for the Nurse Supervisor–Perioperative Services position to the next level because Plaintiff did not have experience in this particular area, and the Sugar Land facility, as a smaller hospital, needed experienced personnel in supervisory positions.[33] Chiobi explained that he was looking to hire someone with significant perioperative or operating room experience to fill this supervisory position.[34] Plaintiff was never contacted by Chiobi about this position, and he was unaware of her race or

---

[29] See Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of Warden ¶ 14.

[30] See id.

[31] See id.

[32] Id. ¶ 15.

[33] See Doc. 58-1, Ex. 3 to Def.'s Mot. for Summ. J., Aff. of Chiobi ¶ 15.

[34] See id.

national origin.[35]

Kane, Mathis, and Mitcham also stated that they never had any contact with Plaintiff and were unaware of her race or national origin until Plaintiff filed the lawsuit.[36] In Mathis's affidavit, she averred that she did not believe that Plaintiff's experience was adequate for a managerial position because the clinic with the open position was new, and Mathis was looking for a candidate with a more robust and relevant experience in a clinic setting.[37]

## 2. Qualifications of Those Hired

Of the positions for which Plaintiff applied, seven of the nine positions were filled by Defendant.[38] Warden averred that the position of Assistant Nurse Manager-Medical/Surgical ICU was "ultimately cancelled."[39] The position of Medical/Surgical Unit Resource Nurse for the Vintage location (Req. No. 1694226) was not filled.[40] The court considers the seven positions that were filled.

George Caneda ("Caneda"), an Asian male, filled the position

---

[35] See id. ¶¶ 17, 19.

[36] See Doc. 58-1, Ex. 4 to Def.'s Mot. for Summ. J., Aff. of Kane ¶ 14; Doc 58-1, Ex. 5 to Def.'s Mot. for Summ. J., Aff. of Mathis ¶ 13; Doc. 58-1, Ex. 7 to Def.'s Mot. for Summ. J., Aff. of Mitcham ¶ 14.

[37] See Doc. 58-1, Ex. 5 to Def.'s Mot. for Summ. J., Aff. of Mathis ¶ 13.

[38] See Doc. 58-1, Ex. 8 to Def.'s Mot. for Summ. J., Job Tracking Spreadsheets pp. 1-10.

[39] See Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of Warden ¶ 13.

[40] See Doc. 58-1, Ex. 8 to Def.'s Mot. for Summ. J., Job Tracking Spreadsheets p. 8.

of Resource Nurse Medical/Surgical (Req. No. 1691052), a position that had minimum requirements of a bachelor's degree in nursing, one year of registered nurse ("RN") experience in the specialty area, and a licensure from the Texas Board of Nursing.[41]  Caneda had a bachelor's degree in nursing and had been working for Defendant as an RN since May 18, 2009.[42]

Monique Martin ("Martin"), an African-American female, filled the position of Clinic Manger at the Vintage location (Req. No. 1692748).[43]  The minimum requirements for this position were a high school or general education development degree and seven years of experience in clinic management.[44]  Martin possessed a bachelor's of science in business administration, and she was working towards a joint master's in healthcare administration and business administration from the University of Phoenix.[45]  Martin had been employed by Defendant since 2006 at its Vintage location, and she had prior experience at other medical facilities since 1998.[46]

---

[41]    See id. p. 1; Doc. 58-1, Ex. 14 to Def.'s Mot. for Summ. J., Resource Nurse Medical/Surgical Tracking Hist. & Job Description pp. 1-7.

[42]    See Doc. 58-1, Ex. 15 to Def.'s Mot. for Summ. J., Caneda's App. Info. pp. 5-6.

[43]    See Doc. 58-1, Ex. 8 to Def.'s Mot. for Summ. J., Job Tracking Spreadsheets p. 2; Doc. 58-1, Ex. 16 to Def.'s Mot. for Summ. J. Clinic Manager–Vintage Location Tracking Hist. & Job Description pp. 1-9.

[44]    See Doc. 58-1, Ex. 16 to Def.'s Mot. for Summ. J. Clinic Manager–Vintage Location Tracking Hist. & Job Description pp. 5-7.

[45]    See Doc. 58-1, Ex. 17 to Def.'s Mot. for Summ. J., Martin's App. Info. p. 6.

[46]    See id. pp. 7-8.

Defendant hired Winter Cooper ("Cooper"), a Caucasian female, to fill the role of Manager Patient Care Medical/Surgical at Defendant's Woodlands location (Req. No. 1692449).[47] The minimum requirements were a bachelor of science in nursing and five years of experience, with a master's in nursing or business administration and three years of management experience preferred.[48] Cooper was an RN, had a bachelor's degree in nursing, and was employed as the head nurse for a school district from 2008 to the time of her application and had prior experience working as a nurse at hospitals.[49]

Zoe Middleton ("Middleton"), a Caucasian female, was hired by Defendant for the position of Staff RN, Outpatient Oncology (Req. No. 1694457).[50] The minimum requirements for this position included a bachelor's of science in nursing, an RN license, and one year of RN experience, with oncology experience preferred.[51] Middleton's qualifications included a bachelor of arts degree, an associate's

_____

[47]     See Doc. 58-1, Ex. 8 to Def.'s Mot. for Summ. J., Job Tracking Spreadsheets pp. 3-4; Doc. 58-1, Ex. 18 to Def.'s Mot. for Summ. J., Manager, Patient Care Tracking Hist. & Job Description pp. 1-7.

[48]     See Doc. 58-1, Ex. 18 to Def.'s Mot. for Summ. J., Manager, Patient Care Tracking Hist. & Job Description p. 5.

[49]     See Doc. 58-1, Ex. 19 to Def.'s Mot. for Summ. J., Cooper's App. Info. pp. 7-8.

[50]     See Doc. 58-1, Ex. 8 to Def.'s Mot. for Summ. J., Job Tracking Spreadsheet p. 5; Doc. 58-1, Ex. 20 to Def.'s Mot. for Summ. J., Staff RN Outpatient Oncology Tracking Hist. & Job Description pp. 1-7.

[51]     See Doc. 58-1, Ex. 20 to Def.'s Mot. for Summ. J., Staff RN Outpatient Oncology Tracking Hist. & Job Description p. 5.

degree in nursing, and a bachelor of science in nursing degree.[52] Additionally, Middleton had oncology experience January 2010 in Defendant's interventional radiology department and with MD Anderson Cancer Center prior to her hire by Defendant.[53]

Patricia McCraray ("McCraray"), a Caucasian female, received the position of RN Unit Supervisor (Req. No. 1694282).[54] For this position, the minimum requirements included a four-year nursing degree, an RN, and at least five years of relevant experience.[55] McCraray had a bachelor's of science in nursing, was an RN, had worked as a charge nurse and a staff nurse since 2005 at Defendant's Woodlands location in the labor and delivery department, and had worked at another hospital as an RN in its labor and delivery department.[56]

Defendant hired Kimberly Roeder-Maher ("Roeder-Maher"), a Caucasian female, for the position of Nurse Supervisor-Perioperative Services (Req. No. 1694283).[57] The minimum

---

[52]  See Doc. 58-1, Ex. 21 to Def.'s Mot. for Summ. J., Middleton's App. Info. p. 8.

[53]  See id.

[54]  See Doc. 58-1, Ex. 8 to Def.'s Mot. for Summ. J., Job Tracking Spreadsheets p. 7; Doc. 58-1, Ex. 22 to Def.'s Mot. for Summ. J., RN-Unit Supervisor: Women's Servs. Tracking Hist. & Job Description pp. 1-7.

[55]  See Doc. 58-1, Ex. 22 to Def.'s Mot. for Summ. J., RN-Unit Supervisor: Women's Servs. Tracking Hist. & Job Description pp. 4-5.

[56]  See Doc. 58-1, Ex. 23 to Def.'s Mot. for Summ. J., McCraray's App. Info. p. 8.

[57]  See Doc. 58-1, Ex. 8 to Def.'s Mot. for Summ. J., Job Tracking Spreadsheets p. 7; Doc. 58-1, Ex. 24 to Def.'s Mot. for Summ. J., Nurse Supervisor-Perioperative Servs. Tracking Hist. & Job Description pp. 1-8.

requirements for this position included a two-year RN degree and at least five years of experience as a supervisor or charge nurse.[58] Roeder-Maher possessed a bachelor's of science in nursing, was an RN, and had been a certified operating room nurse since 2003.[59] She also had many years of experience working for surgical centers and hospitals.[60]

Defendant hired Dana Kepler ("Kepler"), a Caucasian female, for the position of RN-Endoscopy (Req. No. 1694406).[61] The minimum qualifications included that the candidate must be an RN with a two-year degree.[62] Kepler possessed an associate's degree in nursing and was an RN with a license from the Texas Board of Nursing.[63] Additionally, she had worked as an endoscopy nurse from 2000 to 2014.[64]

### 3. Background Check

As explained in the summary judgment evidence, a job offer

---

[58]    See Doc. 58-1, Ex. 24 to Def.'s Mot. for Summ. J., Nurse Supervisor-Perioperative Servs. Tracking Hist. & Job Description p. 5.

[59]    See Doc. 58-1, Ex. 25 to Def.'s Mot. for Summ. J., Roeder-Maher's App. Info. pp. 14-15.

[60]    See id.

[61]    See Doc. 58-1, Ex. 8 to Def.'s Mot. for Summ. J., Job Tracking Spreadsheet p. 9; Doc. 58-1, Ex. 26 to Def.'s Mot. for Summ. J., RN (Endoscopy) Tracking Hist. & Job Description pp. 1-9.

[62]    See Doc. 58-1, Ex. 26 to Def.'s Mot. for Summ. J, RN (Endoscopy) Tracking Hist. & Job Description p. 5.

[63]    See Doc. 58-1, Ex. 27 to Def.'s Mot. for Summ. J., Kepler's App. Info. pp. 14-15.

[64]    See id. p. 14.

extended to a candidate was subject to passing a background check.[65] Defendant's policy was to rescind an offer if the background check showed "substantial inaccuracies" such as:

> (i) a candidate listing on their resume a prior place of employment when, in fact, the candidate never worked for that employer; (ii) a candidate listing on their resume incorrect dates of employment with or separation from a prior employer; (iii) a candidate stating on their resume that they held a position or job title with a prior employer which, in fact, they did not hold; (iv) a candidate listing a reason for their separation of employment from a prior employer that was not, in fact, accurate.[66]

In the course of this lawsuit, a background check and work history verification of Plaintiff was performed.[67] Records from the Harris County Hospital District revealed that Plaintiff was only employed until May 18, 2009, not 2015 as she indicated on her resume, and that she was terminated because of "rude behavior" and "failure to show up to work for four (4) pay periods."[68] Additionally, Plaintiff reported on her resume that she had worked as a charge nurse at Manor of Kansas City from October 1997 to July 1998, when Defendant's check showed that Manor of Kansas City could not verify that Plaintiff had worked there.[69]     Dawn Wright

---

[65]    See Doc. 58-1, Ex. 9 to Def.'s Mot. for Summ. J., Decl. of Dawn Wright ¶¶ 6-8.

[66]    Id. ¶ 8.

[67]    See id. ¶¶ 10-13.

[68]    Id. ¶ 11.

[69]    See id. ¶ 12.

("Wright"), the Division Director of Employee Relations and HR Compliance, averred that "[b]ased on [her] personal knowledge of and experience with [Defendant's] hiring practices, the substantial discrepancies contained within [Plaintiff's] resume would have resulted in any conditional offer of employment being revoked, for failure to successfully complete a work-history/reference check."[70]

### 4. Plaintiff's Interrogatories

In its motion for summary judgment, Defendant attached Plaintiff's answers to interrogatories.[71] One interrogatory asked of Plaintiff to state the facts that showed that Defendant discriminated against her.[72] Plaintiff answered that everyone who was hired was Caucasian, not qualified, had less educational or work experience than she did, and that her "e-mail address showed African ancestry."[73] Plaintiff opined that Stonebrook was "not used to hiring blacks or females."[74] In explaining why those who were hired were less qualified than she, Plaintiff stated that in her opinion, Cooper and Roeder-Maher did not have proper experience for the jobs they were awarded, and she was "not certain of their

---

[70]    Id. ¶ 13.

[71]    See Doc. 58-1, Ex. 28 to Def.'s Mot. for Summ. J., Pl.'s Answers to Interrogs. pp. 1-4.

[72]    See id. p. 1.

[73]    See id.

[74]    See id.

educational background."[75]

## B. **Procedural Background**

Plaintiff filed her complaint on March 24, 2016, after receiving a notice of right to sue letter from the EEOC on February 23, 2016.[76] Defendant filed a first amended answer with leave of court on November 2, 2016.[77] Defendant filed the pending motion for summary judgment on December 16, 2016.[78] Plaintiff has not filed a response.[79]

## II. **Summary Judgment Standard**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable

---

[75] See id. p. 4.

[76] See Doc. 1, Pl.'s Compl. pp. 1-2; Doc. 1-2, Ex. 2 to Pl.'s Compl., EEOC Notice of Right to Sue p. 1.

[77] See Doc. 47, Def.'s Mot. for Leave to File 1st Am. Compl.; Doc. 48, Ord. Dated Nov. 2, 2016; Doc. 49, Def.'s 1st Am. Ans.

[78] See Doc. 58, Def.'s Mot. for Summ. J.

[79] In several docket entries that pre-date the filing of Defendant's motion for summary judgment, Plaintiff filed Defendant's document production along with her annotated comments about the qualifications of the successful job applicants. Even if the court wanted to consider these comments as a response to the motion for summary judgment, the marginalia is unsworn, unauthenticated, speculative, hearsay and lacking a factual basis. Therefore, Plaintiff's criticisms of the qualifications of the successful job candidates made in other pleadings cannot raise a fact issue to defeat summary judgment.

substantive law as critical to the outcome of the suit.  <u>Anderson</u>

<u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet</u>

<u>Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th

Cir. 2001).  To be genuine, the dispute regarding a material fact

must be supported by evidence such that a reasonable jury could

resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at

250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th

Cir. 2002).

The movant must inform the court of the basis for the summary

judgment motion and must point to relevant excerpts from pleadings,

depositions, answers to interrogatories, admissions, or affidavits

that demonstrate the absence of genuine factual issues.  <u>Celotex</u>

<u>Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th

Cir. 1992).  If the moving party can show an absence of record

evidence in support of one or more elements of the case for which

the nonmoving party bears the burden, the movant will be entitled

to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  In response

to a showing of lack of evidence, the party opposing summary

judgment must go beyond the pleadings and proffer evidence that

establishes each of the challenged elements of the case,

demonstrating that genuine issues of material fact do exist that

must be resolved at trial.  <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in

favor of the nonmoving party, and any reasonable inferences are to

be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

### III. Analysis

In its motion for summary judgment, Defendant argues that: (1) Plaintiff has not met her burden to show a prima facie case of discrimination; (2) even if Plaintiff could make a prima facie case, Defendant had legitimate, non-discriminatory reasons for not hiring her; (3) Plaintiff has no evidence of discrimination to show

that Defendant's reasons were mere pretext; and (4) even if summary judgment is not fully granted, Plaintiff is not entitled to all damages she requests in relief based on after-acquired information.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

In the absence of direct evidence, courts analyze discrimination claims under the burden-shifting approach first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and modified in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), and Rachid v. Jack In The Box, Inc., 376 F.3d 305 (5th Cir. 2004). Under this "modified McDonnell Douglas approach," a plaintiff may trigger a presumption of discrimination by establishing a prima facie case. Rachid, 376 F.3d at 312.

A prima facie case of discrimination for failure to hire requires the plaintiff to show that she: (1) is a member of a protected class; (2) she applied and was qualified for a job for which the employer was hiring; (3) she was not selected for the position, despite her qualifications; and (4) after she was rejected, the position stayed open and the employer continued to seek applicants with the plaintiff's qualifications. Johnson v. Maestri-Murrell Prop. Mgmt., LLC, 487 F. App'x 134, 138 (5th Cir.

2012)(unpublished)(citing <u>McDonnell Douglas</u>, 411 U.S. at 802); <u>see also</u> <u>Davis v. Chevron U.S.A., Inc.</u>, 14 F.3d 1082, 1087 (5th Cir. 1994).

Once a plaintiff has established a prima facie case, the burden shifts to the defendant to proffer legitimate, nondiscriminatory reasons for its actions. <u>Okoye v. Univ. of Texas Houston Health Sci. Ctr.</u>, 245 F.3d 507, 513 (5th Cir. 2001). If the defendant satisfies this burden, then the presumption of discrimination dissolves. <u>See</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142-43 (2000); <u>Price v. Fed. Express Corp.</u>, 283 F.3d 715, 720 (5th Cir. 2002).

The plaintiff must then offer evidence to create an issue of fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." <u>Rachid</u>, 376 F.3d at 312 (internal quotation and alteration marks omitted). If the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus. <u>Id.</u>

The ultimate burden of persuasion remains with the plaintiff. <u>Reeves v. Sanderson Plumbing Prod., Inc.</u>, 530 U.S. 133, 143 (2000).

At the summary judgment stage, the court looks for "a conflict in substantial evidence to create a jury question regarding discrimination." Haynes v. Pennzoil Co., 207 F.3d 296, 300 (5th Cir. 2000). The plaintiff must produce some evidence "demonstrating that discrimination lay at the heart of the employer's decision." Price v. Fed. Express Co., 283 F.3d 715, 720 5th Cir. 2002). Evidence of the falsity of an employer's stated justification may be enough, in some cases, to raise a fact issue on pretext, but only if a reasonable jury could conclude that the action was discriminatory. Reeves, 530 U.S. at 147-48.

**A. Prima Facie Case**

Defendant argues that Plaintiff has not made out a prima facie case of discrimination for the following reasons: (1) only one of the recruiters for one position, Joseph Warden, was aware of Plaintiff's race; (2) Plaintiff was not qualified for the positions she sought; and (3) for one of the positions, someone within Plaintiff's protected class was hired.

**1. Awareness of Protected Status**

The Fifth Circuit has not directly addressed the issue of whether an a decision-maker must be aware of an employee's race in order to establish a prima facie case for employment discrimination. However, district courts in the Fifth Circuit have looked to other circuits to find that, "[w]here intentional discrimination under Title VII is alleged, a prima facie case requires a plaintiff to demonstrate that the challenged employment

decision was made by someone who was aware of the plaintiff's status as a member of the protected class." Phillips v. TXU Corp., No. 3:05-CV-1588-B, 2006 WL 3900112, at *6 (N.D. Tex. 2006)(quoting Todd v. Waste Mgmt. of Texas, Inc., 2004 WL 1465771, at *3 (W.D. Tex. 2004))(citing Robinson v. Adams, 847 F.2d 1315, 1316 (9th Cir. 1987)("An employer cannot intentionally discriminate against a job applicant based on race unless the employer knows the applicant's race."); Weiss v. La Suisse, 260 F. Supp.2d 644, 657 (S.D.N.Y. 2003)); see also Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996)("[w]e cannot presume that an employer most likely practiced unlawful discrimination when it did not know that the plaintiff even belonged to the protected class. The employer's knowledge in this class of cases, is a critical element of the plaintiff's prima facie case.").

This court agrees with the Third Circuit that "it is counter-intuitive to infer that the employer discriminated on the basis of a condition of which it was wholly ignorant" and, therefore, "in this situation the bare McDonnell Douglas presumption no longer makes sense." Geraci, 82 F.3d at 581. Therefore, if Plaintiff cannot show that those who made the hiring decisions knew her race or national origin, then her discrimination claims cannot survive the defendant's motion for summary judgment. Phillips, 2006 WL 3900112, at *6 (citing Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996)).

In support of this motion, Defendant has submitted evidence demonstrating that of the six recruiters in this case, only Warden had any face-to-face contact with Plaintiff. In fact, other than Stonebrook's conducting a phone interview with Plaintiff, none of the other recruiters ever spoke to her. In her answers to interrogatories, Plaintiff claims that her email address revealed her race and national origin; however, email address supplied on Plaintiff's resume was j.galbearth@netzero.com,[80] which the court finds does not reveal Plaintiff's race or national origin.

The recruiters, other than Warden, averred that they were unaware of Plaintiff's race or national origin when making their hiring decisions. The summary judgment evidence also shows that Defendant's recruiting system did not allow the recruiters to access a potential applicant's race or national origin during the recruiting process. Because Plaintiff failed to rebut this summary judgment evidence and raise a fact issue that the recruiters other than Warden were aware of her race or national origin, summary judgment must be granted with respect to those seven positions.[81]

## 2. After-Acquired Evidence

---

[80]     See Doc. 58-1, Resume of Pl. p. 58 of 261.

[81]     Those positions are: Resource Nurse Medical/Surgical (Req. No. 1691052); Staff Registered Nurse - Outpatient Oncology (Req. No. 1694457); Clinic Manager-Vintage location (Req. No. 1692748); Nurse Supervisor - Perioperative Services (Req. No. 1694283); Manager Patient Care Medical/Surgical (Req. No. 1692449); RN-Unit Supervisor (Req. No. 1694282); Clinic Manager - Vintage - Perioperative Services (Req. No. 1692748); and RN-Endoscopy - Springwoods Village (Req. No. 1694406).

Defendant challenges that Plaintiff was a qualified applicant, contending that the falsehoods contained in Plaintiff's resume would have been revealed in a background check and would have resulted in Defendant's revoking any job offer made to Plaintiff.

In <u>McKennon v. Nashville Banner Publ'g Co.</u>, 513 U.S. 352, 354-55 (1995), an employee brought a claim under the Age Discrimination in Employment Act ("ADEA") after she was terminated by her long-standing employer during the course of a reduction-in-force. Her employer conceded that its actions violated the ADEA, but argued that it should not be held liable because, during discovery in the case, the employee admitted that she engaged in unrelated misconduct. <u>See</u> <u>id.</u> at 354-55. The Supreme Court held that after-acquired evidence does not prevent an employer from being held liable for violations of the ADEA, because "[t]he employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for a nondiscriminatory reason." <u>See</u> <u>id.</u> at 359-60.

The Court found that while after-acquired evidence does not affect an employer's liability, it may impact the remedy a plaintiff seeks if the employer establishes "that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." <u>See</u> <u>id.</u> at 362-63. This holding has been expanded to Title VII and Equal Pay Act cases. <u>See</u>, <u>e.g.</u>,

24

<u>Wallace v. Dunn Constr. Co., Inc.</u>, 62 F.3d 374, 378 (11th Cir. 1995)(collecting cases).

In <u>Shattuck v. Kinetic Concepts</u>, 49 F.3d 1106, 1108 (5th Cir. 1995), a terminated employee brought a claim under the ADEA. <u>Shattuck</u>, 49 F.3d at 1108. Prior to trial, it was discovered that the plaintiff had materially misrepresented on his application the level of education he had completed. The Fifth Circuit reiterated <u>McKennon</u>'s holding, stating "that evidence of employee wrongdoing acquired by the employer after termination does not provide immunity from liability but may affect the remedy." <u>Id.</u> In analyzing whether the after-acquired evidence modified the remedy, the court distinguished failure-to-hire cases, stating that "the pertinent inquiry, except in refusal-to-hire cases, is whether the employee would have been fired upon discovery of the wrongdoing, not whether he would have been hired in the first instance."[82] <u>Id.</u> at 1108.

The court agrees with Defendant that it is an essential element of a prima-facie case that the person be qualified for the position. <u>See</u> <u>Davis</u>, 14 F.3d at 1087. In the present case, Wright averred that the after-acquired evidence - here, the substantial

---

[82] The EEOC Enforcement Guidance released after these two decisions adopted <u>Shattuck</u> and added that in failure-to-hire cases, "the pertinent inquiry is whether the employer would have lawfully rejected the applicant had it been made aware of the after-discovered evidence at the time of the hire," reasoning that "the employer should not be impeded in the exercise of legitimate prerogatives and the employee should not be placed in a better position than he would have occupied absent the discrimination." EEOC Enforcement Guidance: Enforcement Guidance on After-Acquired Evidence and <u>McKennon v. Nashville Banner Publ'g Co.</u>, 115 S.Ct. 879, 65 EPD Par. 43,368 (1995), Dec. 14, 1995.

discrepancies between Plaintiff's resume and actual work history –
would have resulted in the revocation of any conditional offer of
employment. Wright's testimony that a successful background check
was a requirement for employment was uncontroverted. Applying the
Shattuck court's admonishment that in the case of a failure to
hire, an employee should not be placed in a better position than he
would have been but for the discrimination, the court concludes
that passing a background check was a requirement for all the jobs
sought. Thus, Plaintiff has not raised a prima facie showing that
she was qualified for any position that forms the basis for this
suit. See Shattuck, 49 F.3d at 1108.

### 3. Within Protected Class

Defendant argues, alternatively, that Plaintiff cannot
establish a prima facie case of race or national origin
discrimination regarding the position of Clinic Manager-Patient
Care (Req. No. 1692748) because it hired Monique Martin, an
African-American female. Because the court has already recommended
that summary judgment be granted on this position because the
recruiter was unaware of Plaintiff's race or national origin, and
that Plaintiff was not qualified for the position, the court need
not reach this issue.

### B. Legitimate, Nondiscriminatory Reasons

Defendant contends that it had legitimate, non-discriminatory
reasons for not hiring Plaintiff, including: (1) those hired by

26

Defendant were well qualified for their positions and (2) Plaintiff's resume contained obvious inconsistencies and her phone interview raised questions about her ability to clearly communicate with others. Although the court has found that Plaintiff has not alleged a prima facie case of discrimination on any position sought, as discussed above, out of an abundance of caution, it proceeds to consider whether Defendant has met its burden of production. See Oyoke, 245 F.3d at 513.

Here, Defendant offers legitimate, non-discriminatory reason for why Plaintiff was not hired, stating that, with respect to the seven open positions which were actually filled, the candidates were well-qualified. Chiobi and Mathis averred that Plaintiff's experience was not adequate for the positions for which they were recruiting.[83] Stonebrook found Plaintiff's resume to be poorly constructed and her thought process during the phone interview to be "scattered" and "incoherent."[84] He also found Plaintiff to be rude. Kane stated that the two persons she passed along for further consideration who were ultimately hired, Cooper and McCrary, were well-qualified, with extensive relevant experience for the positions to be filled.[85]

---

[83] Doc. 58-1, Ex. 3 to Def.'s Mot. for Summ. J., Aff. of Chiobi p. 3-4; Ex. 5 to Def.'s Mot. for Summ. J., Aff. of Mathis p. 3.

[84] Doc. 58-1, Ex. 2 to Def.'s Mot. for Summ. J., Aff. of Stonebrook, p. 4.

[85] Doc. 58-1, Ex. 4 to Def.'s Mot. for Summ. J., Aff. of Kane p. 3.

Warden, the only recruiter who actually met Plaintiff, averred that he was filling two positions - a Medical/Surgical Unit Resource Nurse for the Vintage location and an Assistant Nurse Manager – Medical/Surgical ICU.[86]   The latter position was ultimately cancelled.  Warden did not believe Plaintiff was right for the former position based on his brief conversation with her at the job fair and the contents of her resume. Additionally, Warden expressed concern that he was hiring for positions in Houston, but she told him that she wanted to work in Sugar Land.  The court finds that these are legitimate, nondiscriminatory reasons for not hiring Plaintiff.

## C.  **Pretext**

In its motion for summary judgment, Defendant contends that Plaintiff has no evidence to show that Defendant's reasons were merely pretext for discrimination.  Plaintiff has not responded to Defendant's motion for summary judgment to offer evidence of pretext, but has claimed throughout this case that she is more qualified than those who were hired by Defendant.

To show pretext, Plaintiff would need to demonstrate that "no reasonable person, in the exercise of impartial judgment could have chosen the candidate selected over the plaintiff for the job in question."  Moss v. BMC Software, Inc., 610 F.3d 917, 923 (5th Cir. 2010)(quoting Deines v. Texas Dep't of Protective & Regulatory

---

[86]     Doc. 58-1, Ex. 6 to Def.'s Mot. for Summ. J., Aff. of Warden p. 3.

<u>Servs.</u>, 164 F.3d 277, 280-81 (5th Cir. 1999)). "Unless the qualifications are so widely disparate that no reasonable employer would have made the same decision, any differences in qualifications are not probative evidence of discrimination." <u>Id.</u> (internal quotations and alterations omitted)(citing <u>Deines</u>, 164 F.3d at 280-81 (5th Cir. 1999); <u>Celestine v. Petroleos de Venezuella SA</u>, 266 F.3d 343, 357 (5th Cir. 2001)).

Even if the court were to find that Plaintiff had made a prima facie case of discrimination on all the positions to which she applied, she has not raised a fact issue to overcome Defendant's proffered legitimate, nondiscriminatory reasons for her non-hire for any those positions. Plaintiff has failed to provide any evidence to show that she was clearly better qualified than any candidate and that no reasonable person would have chosen that person over her.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual

findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 12th day of June, 2017.

_____
U.S. MAGISTRATE JUDGE